```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2

 3   - - - - - - - - - - - - - - - - X
                                     :    CV-10-2330
 4   PHILLIPS,

 5                                   :

 6      PLAINTIFF,                   :

 7                                   :
            V.                            U.S. Courthouse
 8                                        Brooklyn, New York

 9   THE CITY OF NEW YORK,           :

10
        DEFENDANT.                   :
11
                                          December 15, 2011
12                                        2:00 o'clock p.m.
                                     :
13
     - - - - - - - - - - - - - - - - X
14
                 TRANSCRIPT OF ORAL ARGUMENT
15            BEFORE THE HONORABLE CAROL B. AMON
               CHIEF UNITED STATES DISTRICT JUDGE
16

17   APPEARANCES:

18   For the Plaintiff:          BRIAN BROMBERG, ESQ.
                                 MICHAEL LITROWNIK, ESQ.
19

20

21   For the Defendant:          KIMBERLY SAVINO, ESQ.
                                 MARY O'FLYNN, ESQ.
22

23   Court Reporter:             Sheldon Silverman
                                 (718) 613-2537
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by CAT.


              SS      OCR     CM      CRR      CSR
```

```
 1              THE CLERK:  Phillips versus the City of New York.
 2              THE COURT:  Good afternoon.  The defendants have
 3   moved to dismiss the malicious prosecution claim.  Who will
 4   argue?
 5              MS. SAVINO:  I will.
 6              THE COURT:  Step forward.  Everyone else can be
 7   seated.  I'll call you up one at a time.
 8              MS. SAVINO:  Defendants are moving for a partial
 9   summary judgment on the malicious prosecution claim.  The
10   plaintiff was indicted by a grand jury six days after his
11   arrest and he was charged with three counts of assault in the
12   second degree, three counts of assault in the third degree,
13   one each per three officers and two counts of unlawful
14   possession of marijuana in the second degree.
15              THE COURT:  Does there have to be probable cause
16   for all those crimes?  Assuming there was not probable cause
17   for one of the crimes that Mr. Phillips was indicted for but
18   probable cause for the other crimes, does he still have a
19   malicious prosecution claim, assuming all the other elements
20   are brought forth of malicious prosecution?
21              MS. SAVINO:  My reading of the case law, he would
22   still have a malicious prosecution claim as to those specific
23   charges if there was no probable cause for the arrest.
24              THE COURT:  What do you mean?
25              MS. SAVINO:  If there's probable cause for any
```

1  charges, the prosecution could go forward, I'm sorry.

2          THE COURT: In other words, if there's probable
3  cause for any of the charges that were brought, then that is
4  the end of the malicious prosecution claim; is that your
5  position?

6          MS. SAVINO: My position is the grand jury
7  indictment creates the presumption of probable cause.

8          THE COURT: Assuming that was overcome with respect
9  to one but not all of the charges that he was indicted for,
10 does he still have left a viable malicious prosecution claim?
11 In other words on the disorderly conduct, the assaults I find
12 the presumption of probable cause was not rebutted but -- it
13 was rebutted, for example, with the marijuana. Can he still
14 go forward on a malicious prosecution claim?

15         MS. SAVINO: I don't believe so, your Honor.

16         THE COURT: It's your position there's a
17 presumption of probable cause?

18         MS. SAVINO: Created by the grand jury indictment.

19         THE COURT: Is it plaintiff's position the officers
20 who testified before the grand jury fabricated their
21 testimony, lied, therefore the presumption evaporates?

22         MS. SAVINO: I don't believe that necessarily
23 explains his argument. Plaintiff's argument is that the
24 differing version of events between plaintiff and defendant
25 officers coupled with his testimony of the witness who

1  testified at both trials of the plaintiff, I think that's
2  their argument, that that witness's testimony plus plaintiff's
3  testimony rebuts the presumption of probable cause created by
4  the grand jury.
5              THE COURT:  Why isn't that so?
6              MS. SAVINO:  Plaintiff relies on the opposition
7  papers on the case of Boyd.  In Boyd, the circumstances are
8  very different from this case.  In Boyd, you have a plaintiff
9  who was arrested for stealing a vehicle.  The officers
10 testified the probable cause for his arrest was that he
11 admitted he bought this vehicle for 75 dollars and that gave
12 rise to the probable cause to arrest him because who would be
13 able to purchase a car for 75 dollars?
14             The issue in that case was whether or not the
15 statement was made prior to his arrest.  The defendant
16 officers said the statement was made when he was not in
17 custody, outside his home.  He was free, essentially.  The
18 plaintiff argued no, this statement was made in his home prior
19 to his arrest.  Leaving his home, he was already in custody
20 and therefore could not have given rise to the probable cause
21 to arrest.
22             In addition, there was also police paperwork created
23 by the defendant officers in that case that stated plaintiff
24 was arrested in his home which gave credence to plaintiff's
25 argument that the statement would not have been able to give

1   rise to probable cause if he was already in custody.

2              In that case, you have documentation that would go
3   against the officers' testimony, would tend to support the
4   fact they lied.

5              THE COURT:  Here you have an additional witness
6   that supports him, Ms. Jones.

7              MS. SAVINO:  Ms. Jones is an individual who the
8   plaintiff had met on the day of the incident, who they
9   maintained contact with over the two years.  Ms. Jones
10  testified at the trial.  The only two questions relevant, she
11  testified at trial she didn't see the plaintiff throw anything
12  and that she didn't see the plaintiff kick, hit or bite the
13  police officers, not that it didn't happen, just that she did
14  not see it herself.

15             THE COURT:  Isn't that cutting it a little fine?
16  Wasn't she by virtue of the rest of her testimony there, in a
17  position to see if it happened?

18             MS. SAVINO:  She was there at the initial
19  interaction with the police and the plaintiff by this white
20  van the officers had stopped.  Then the plaintiff takes off
21  and the officers give chase.  She appears, was not with them
22  the entire time, my understanding from her testimony.

23             THE COURT:  You don't reasonably construe her
24  testimony to be "I didn't see it," meaning it didn't happen?
25  You think she's not saying that?

1          MS. SAVINO:   From my reading it when they asked her
2    did you see it, that would be my opinion.
3          THE COURT:   Is it established she's there, leading
4    up to asking her the question whether she saw it or not?  Is
5    it established she was there?
6          MS. SAVINO:   Established she was running some ways
7    behind the officers who were running some ways behind the
8    plaintiff.
9          For the unlawful possession of marijuana charges, he
10   was charged with two separate possessions.  One was when the
11   officer observed him throwing a bag of marijuana to the ground
12   when the officers were chasing him.  The second possession was
13   when the plaintiff was in the police vehicle already back at
14   the precinct and the same officer observed him try to stick a
15   bag of marijuana behind the seat of the vehicle.
16         THE COURT:   Is he charged with two separate counts
17   of possession of marijuana?
18         MS. SAVINO:   Yes.  She couldn't have seen
19   anything --  I'm trying to say --  at the precinct because she
20   was not there.
21         THE COURT:   You're saying there's nothing in
22   addition to a simple conflict between the defendants --
23         MS. SAVINO:   Yes.
24         THE COURT:   All that would mean would be that he
25   wouldn't have a malicious prosecution claim as to that

particular charge, assuming her testimony is reasonably construed to be contradicting the police officers, correct?

MS. SAVINO: Right.

THE COURT: That aspect of the malicious prosecution would not go to a jury?

MS. SAVINO: Right. If the court construes Ms. Jones's testimony as a plus, the testimony should not be considered as a plus factor.

THE COURT: I'll hear from the plaintiff.

MR. LITROWNIK: Good afternoon.

THE COURT: You know the issue I'm interested in, the analysis of Ms. Jones's testimony.

MR. LITROWNIK: Defendants are attempting to get to the credibility of Ms. Jones's testimony as well as the choices between conflicting versions of events, the weighing of evidence which are not appropriate for summary judgment. It's plaintiff's position you don't need to get to the unlawful marijuana, the assault. If there's no probable cause for the arrest and the chase of plaintiff, then there could be no probable cause for the assault against the officers.

THE COURT: What are you saying, that somehow you would suppress the assault case because of the marijuana? That's not the law. In other words, if someone comes up to a police officer and the police officer stopped them without probable cause and let's say without probable cause they see

8

1  the marijuana.  It might not be suppressed, if in fact the
2  defendant in that case, upset with the police officers because
3  they stopped him without probable cause, popped the guy in the
4  face, you couldn't suppress that?  That's not something that
5  would be suppressed as a fruit of an unlawful stop?
6           MR. LITROWNIK:  What happened here --
7           THE COURT:  You agree with what I said?
8           MR. LITROWNIK:  I do agree.  What happened here is
9  essentially what plaintiff and the nonparty witness have
10 testified to, is that plaintiff peacefully questioned the
11 officers about what they were doing and the officers basically
12 instigated and escalated the situation, began running after
13 plaintiff, tackled him onto the hood of a car and it's
14 plaintiff's position marijuana was planted, not quite sure of
15 the motive but the narcotics were planted.  It's plaintiff's
16 position if there's no probable cause for the chase of the
17 plaintiff in the violent subjugation of the plaintiff, what
18 happens later isn't relevant to the malicious prosecution
19 claim.
20          THE COURT:  I'm not sure I followed what you said.
21 The whole issue here -- let me step back for a moment -- is
22 whether or not you can rebut the presumption of probable cause
23 that arises from the grand jury's return of an indictment?
24          MR. LITROWNIK:  That's correct.
25          THE COURT:  You would have to show bad faith,

1  fraud, perjury.  The law basically is that it's simply not
2  enough to have a defendant say "I didn't do what they said I
3  did."  It seems to me if there's something else, some other
4  corroboration, in this case the plaintiff's version of events,
5  then that is sufficient to rebut the presumption of probable
6  cause?  It seems like to me that the issue is whether
7  Ms. Jones's testimony does that.  In other words, the
8  defendant says "I was minding my own business, sitting on the
9  stoop, officers came up to me and assaulted me."
10             To what extent do you read the testimony of
11  Ms. Jones to support that account?
12             MR. LITROWNIK:  The testimony of Ms. Jones is
13  completely consistent with plaintiff's testimony and
14  plaintiff's version of events.  As we addressed in our
15  opposition papers, we essentially summarized the entire extent
16  of the testimony starting from the beginning of the incident
17  through when plaintiff was chased.  Both plaintiff and
18  Ms. Jones testified that they observed defendants Espinal and
19  Smith pull an individual out of the way, started beating him,
20  started yelling at him.  Plaintiff, separated by a fence
21  between himself and defendants Espinal and Smith, asked them
22  what they were doing at which point both parties testified
23  they began swearing at him, yelling at him and at that point
24  plaintiff pulled out his phone to call 911 to report what he
25  had seen.  Plaintiff believed the officers were beating an

1  unarmed, innocent individual, so he called 911.

2          Another car showed up.  Plaintiff put his phone back
3  in his pocket and defendant Espinal, after the other two
4  defendants got out of the car, started pointing at him,
5  defendant Espinal began chasing him and plaintiff turned
6  around, ran.  Both parties testified precisely to that effect.

7          If I can add one point, in defendant's reply papers,
8  they essentially raise entirely new arguments that plaintiff
9  wasn't given an opportunity to address in the papers.

10          THE COURT:  Which arguments are those?

11          MR. LITROWNIK:  Basically the entire reply,
12  memorandum of law.

13          THE COURT:  What argument are they advancing, other
14  than there's a presumption of probable cause?

15          MR. LITROWNIK:  They address arguments whether or
16  not the defendants didn't continue the proceeding against
17  plaintiff after a hung jury at the first trial, an argument
18  ancillary to that, they assert the grand jury minutes have not
19  been authenticated.

20          THE COURT:  What would you have to do to
21  authenticate the grand jury minutes?

22          MR. LITROWNIK:  Your Honor --

23          THE COURT:  Can't that issue easily be remedied?

24          MR. LITROWNIK:  We have served on the three
25  officers to authenticate their grand jury testimony and

1  defendants have replied the officers will be unable to because

2  they're not the appropriate person, unable to because the

3  grand jury occurred over five years ago.

4          THE COURT:  How do you otherwise authenticate?

5  Where did you get the grand jury minutes from?

6          MR. LITROWNIK:  From plaintiff who got them at some

7  point before his first criminal trial.  Defendants Espinal and

8  Morales and O'Neil actually authenticated limited portions of

9  the grand jury testimony at their depositions.  Inadvertently,

10 every other page of the grand jury minutes were printed out

11 instead of every page so they authenticated every other page.

12 In addition, plaintiff -- we're in the process, trying to

13 contact the court reporter to provide an affidavit to

14 authenticate them as well.  Defendants are still pressing this

15 issue even after Judge Pohorelsky unsealed the grand jury

16 minutes and they're authenticated in a limited form.

17         THE COURT:  There's a subsidiary issue about a

18 state law claim defendants believe should be dismissed because

19 of failure to file the appropriate procedures?

20         MR. LITROWNIK:  The plaintiff agrees.

21         THE COURT:  That state law claim will be dismissed.

22         Let me ask the defendant, do you have some reason to

23 believe these grand jury minutes have been doctored or not

24 appropriate?

25         MS. SAVINO:  No, your Honor.  There are procedures

1  that are in place that defendants attempted to have plaintiff
2  follow the past couple of months.
3        THE COURT:  What does he need to do that would
4  cause you to accept them?  You're saying they're not
5  authenticated.  What would satisfy you?
6        MS. SAVINO:  Mr. Litrownik said they were trying to
7  get the court reporter to sign a certification.  This occurred
8  May 29th, 2007 is when the defendant officers testified before
9  the grand jury.  While they were shown portions of their
10 testimony at the deposition, they could admit they were asked
11 questions, answered truthfully, appeared to be their testimony
12 but how can they almost five years later say yes, that's
13 exactly what happened at the grand jury?  What the defendants
14 want is the proper procedure to be followed.
15       THE COURT:  I take it you can make an effort to do
16 that?
17       MR. LITROWNIK:  We're in the process.
18       THE COURT:  My own view of this, I'm going to deny
19 the motion for summary judgment because it seems to me under
20 the arguments that have been articulated, that you have more
21 than just a disagreement between Mr. Phillips and the
22 officers' testimony.  You have to, mentioned in other cases
23 interpreting Boyd, in that it seems like this witness,
24 Ms. Jones, provides the additional testimony that takes it out
25 of the realm of simply plaintiff says/defendant says

13

1   proposition.  I'm going to deny summary judgment.
2          Are you completed with your discovery?  Is this case
3   ready for trial?
4          MR. LITROWNIK:  Yes.
5          THE COURT:  Have you filed a pretrial order?
6          MR. LITROWNIK:  We haven't.
7          MS. SAVINO:  It was stayed pending the oral
8   argument and the court's decision on the motion.
9          THE COURT:  May I give you a schedule for that?  I
10  imagine the way to do it, you exchange between each other.
11  Since you're grown-ups, let me let you work out that schedule.
12  I'll give you a date to file a joint pretrial order.  Why
13  don't you file the joint pretrial order by January 23rd?  Then
14  I would ask you to schedule a conference.  Who is the
15  magistrate judge on this case?
16         MR. LITROWNIK:  Judge Pohorelsky.
17         THE COURT:  To write a letter, plaintiff can write
18  a letter to Judge Pohorelsky saying the pretrial order is due
19  January 23rd, asking for a conference to address the pretrial
20  order and were there settlement discussions?
21         MS. SAVINO:  We have.  Settlement is not a
22  possibility.
23         THE COURT:  You've had them with Magistrate Judge
24  Pohorelsky?
25         MS. SAVINO:  Yes, your Honor.

SS        OCR        CM        CRR        CSR

1          THE COURT:  Write in the letter, plaintiff can
2    write a letter without either one of you saying that I have
3    requested a scheduled conference to review the pretrial order
4    and I've requested settlement efforts be once again be
5    entertained.
6          Assuming that's done, how long do the parties think
7    the case would take to try?
8          MS. SAVINO:  The defendants believe three to four
9    days.
10          MR. LITROWNIK:  Three to five days.
11          THE COURT:  I'll set it down for trial for February
12   27TH with a pretrial conference February 23rd at 2:00 p.m.
13   Everybody has that?
14          MS. SAVINO:  Yes.
15          MR. LITROWNIK:  Yes.
16          THE COURT:  Thank you.
17
18
19
20
21
22
23
24
25

              SS      OCR      CM      CRR      CSR