UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DINO PHILLIPS,

                Plaintiff,

                                  **MEMORANDUM & ORDER**
        v.                              10-CV-2330 (MKB)

THE CITY OF NEW YORK, EDWIN
ESPINAL, CHARLENE SMITH, HECTOR
MORALES and PETER O'NEILL,

                Defendants.

-----------------------------------------------------------------x

MARGO K. BRODIE, United States District Judge:

       Plaintiff Dino Phillips brings the above-captioned action pursuant to 42 U.S.C. § 1983 against Defendants City of New York and police officers Edwin Espinal, Charlene Smith, Hector Morales and Peter O'Neill (the "Defendant Officers") for false arrest, excessive force and malicious prosecution. Trial is scheduled to begin July 30, 2012. Now before the Court are the parties' motions *in limine* and Plaintiff's motion to conduct additional discovery.[1]

---

[1] The Court heard argument on June 11, 2012. At argument, the Court made the following rulings: Plaintiff's request to amend the Joint Pre-Trial Order ("JPTO") is granted, except as to the fifth document, the "Decision and Order," which Plaintiff has agreed to withdraw; the New York City Police Department is dismissed as a defendant; Defendants' motion for reconsideration of their summary judgment motion regarding Plaintiff's malicious prosecution claim is granted and on reconsideration the motion is denied; Defendants' motion to dismiss Plaintiff's false arrest claim is denied; Defendants will be permitted to admit the command log at trial; Defendants will be permitted to admit the marijuana at trial and to amend the JPTO to add the marijuana as an exhibit; Defendants' motion to preclude Plaintiff from eliciting testimony that Defendants were observed beating a man by a white van is denied; and Defendants' motion to preclude Plaintiff from offering any evidence that the City may indemnify the Defendant Officers is granted. The Court reserved decision as to all other motions.

I.  **Severance of the *Monell* Claim**

A court has the discretion to order separate trials "[f]or convenience, to avoid prejudice or to expedite or economize." Fed. R. Civ. P. 42(b); *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). Bifurcation "may be appropriate where . . . the litigation of the first issue might eliminate the need to litigate the second issue, . . . or where one party will be prejudiced by evidence presented against another party." *Amato*, 170 F.3d at 316 (internal citations omitted). Both factors support severance of the *Monell* claim in this action. If Plaintiff does not prevail on his claims against the Defendant Officers, another trial will not be necessary. Additionally, to prove Plaintiff's *Monell* claim, Plaintiff seeks to admit evidence of federal civil rights lawsuits, Civilian Complaint Review Board ("CCRB") complaints and other investigations. This evidence is not admissible against the Defendant Officers[2] and would significantly prejudice them if admitted in support of Plaintiff's *Monell* claim. Therefore, a separate trial will be held on the *Monell* claim. The Court will defer ruling on Defendants'

---

[2] Plaintiff argues that the federal civil rights lawsuits, CCRB complaints and other investigations are admissible against the Defendant Officers as evidence of a "pattern and practice of relevant conduct among the defendants of falsely arresting citizens and using excessive force in such arrests." (Pl. Mot. Limine Mem. 8.) Under the Second Circuit's "inclusionary approach," evidence of "prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity . . . as long as it is relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal citations and quotation marks omitted). However, admission of extrinsic acts as evidence of a pattern or practice under Rule 404(b) is only permitted if those acts share "unusual characteristics" with the acts alleged or represent a "unique scheme." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (*quoting United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978). Having thoroughly reviewed the complaints and investigations that Plaintiff has proposed as exhibits, the Court finds no "unusual characteristics" or evidence of a "unique scheme" that would support their admission against the Defendant Officers. Moreover, any probative value of the complaints would be substantially outweighed by the danger of unfair prejudice to the Defendant Officers because the lawsuits are mere allegations and none of the CCRB complaints have been substantiated. *See* Fed. R. Evid. 403.

motion to dismiss the *Monell* claim and the admissibility of the complaints and investigations in support of that claim, until after the conclusion of the trial against the Defendant Officers.[3] *See Bonilla v. Jaroncyzk*, 354 Fed. App'x 579, 581 (2d Cir. 2009) ("By ruling that it would assess Bonilla's right to proceed with a *Monell* claim if he succeeded on any of his claims against the individual defendants, the district court effectively bifurcated trial. Such bifurcation falls well within the court's discretion, . . . because litigation of the first issue might eliminate the need to litigate the second issue.") (internal citations and quotation marks omitted).

## II. False Arrest and Malicious Prosecution Claims Against Defendant Smith

Defendants argue that Plaintiff's claims against Defendant Smith for false arrest and malicious prosecution must be dismissed for lack of personal involvement. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d. Cir. 1995) (*quoting Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

Defendant Smith testified at her deposition that on the day of the incident, she and Defendant Espinal pulled over a man in a white van. (Deposition of Charlene Smith, Aug. 5, 2011 ("Smith Dep.") at 26.) Plaintiff then observed Defendant Smith and Defendant Espinal pull the man out of the white van and assault him. (Pl. Mot. Limine Mem. 3.) Defendant Smith testified that, while they were conducting the investigation, Plaintiff was screaming at them, "what the f--- are you cops doing, you're not supposed to do that." (Smith Dep. at 27.) Defendant Smith testified that she told Plaintiff to step back. *Id.* at 28. Defendants Smith and Espinal then requested that Defendant O'Neill come to the scene. *Id.* at 30. Defendants O'Neill and Morales arrived to assist Defendants Smith and Espinal. *Id.* At one point, Defendant Smith

---

[3] As a result of the severance of the *Monell* claim, the City of New York will not be a defendant in the first trial.

turned around and Plaintiff had run away and Defendant O'Neill was running after Plaintiff. *Id.* Defendant Smith then ran in the same direction as Plaintiff and Defendant O'Neill and found Plaintiff handcuffed in the back of a car, holding his leg. *Id.* at 31. Plaintiff alleges that after he arrived at the precinct, and before he was assaulted again, Defendant Smith walked by him and said, "This is the one that don't like to mind his motherf---ing business." (Pl. Mot. Limine Mem. 4–5.) Plaintiff claims that the Defendant Officers, including Defendant Smith, assaulted him at the precinct. *Id.*

Based on the foregoing, the Court finds sufficient facts from which a jury could find that Defendant Smith was personally involved in Plaintiff's false arrest and malicious prosecution. Plaintiff claims, among other things, that he "was retaliated against because he had the nerve to question, in a peaceful manner, why NYPD officers were assaulting a fellow black man." *Id.* at 5. Plaintiff has alleged that Defendant Smith was personally involved in the initial assault that resulted in the retaliation against Plaintiff, and therefore Defendant Smith had a motive to falsely arrest and maliciously prosecute Plaintiff. Moreover, a jury could infer from Defendant Smith's actions at the scene, her role in involving Defendant O'Neill in the incident, her comment to Plaintiff at the precinct and her assault of Plaintiff at the precinct that she was personally involved in the false arrest and malicious prosecution of Plaintiff. Defendants' motion to dismiss the false arrest and malicious prosecution claims against Defendant Smith is denied.

### III. Plaintiff's Claims for Economic Damages

Defendants move to preclude Plaintiff from presenting evidence of economic damages resulting from (1) the suspension of Plaintiff's contractor licenses and (2) the failure to return Plaintiff's tax documents. (Def. Mot. Limine Mem. 18.) Defendants argue that Plaintiff is precluded from recovering damages related to the loss of his contractor licenses or the loss of his

tax documents because he failed to exhaust his state administrative remedies.[4] *Id.* at 20–23. Specifically, Defendants argue that "if plaintiff is alleging a deprivation of property . . . a section 1983 claim is not actionable if Plaintiff had a meaningful post-deprivation remedy available to him under state law." *Id.* at 20–21.

Defendants rely on the Supreme Court's decision in *Parratt v. Taylor*, 451 U.S. 527 (1981), and its progeny in support of this argument. (Def. Mot. Limine Mem. 20–23.) However, these cases address the specific issue of whether a plaintiff can state a due process claim for deprivation of property when an adequate post-deprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. . . . [T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."); *Parratt*, 451 U.S. at 544 ("The [post-deprivation remedies] could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process."), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Mejia v. N.Y.C. Dep't of Corr.*, No. 96 Civ. 2306, 1999 WL 138306, at *4 (E.D.N.Y. Mar. 5, 1999) ("The Second Circuit has qualified the holdings of *Parratt* and *Hudson*, stating that 'an adequate post-

---

[4] Defendants also argue that Plaintiff should be precluded from seeking damages related to the loss of his contractor licenses because the loss of his licenses was a result of his own negligence. (Def. Mot. Limine Mem. 19–20.) Defendants argue that Plaintiff lost his licenses, not because of his arrest, but because he failed to update the New York City Department of Consumer Affairs (the "DCA") regarding the status of the criminal charges against him. *Id.* Plaintiff contends that he dutifully kept the DCA up-to-date regarding the status of his criminal charges, but his licenses were still suspended. (Pl. Opp'n Mot. Limine 16.) A question of fact exists as to whether Plaintiff lost his licenses as a result of his own negligence or as a proximate cause of his alleged injuries; therefore, Defendants' motion is denied.

deprivation remedy is a defense to a Section 1983 due process claim only where the deprivation is random and unauthorized.'" (*quoting Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990)).

Unlike the cases cited by Defendants, Plaintiff is not claiming a deprivation of property without due process. Rather, Plaintiff alleges that he was falsely arrested, subjected to excessive force and maliciously prosecuted and that his economic damages, including the loss of his contractor licenses and his tax documents, were a proximate cause of those alleged injuries. Nothing in the cases cited by Defendants suggest that a plaintiff is prohibited from recovering damages resulting from lost property in *any* Section 1983 action; in fact, courts have declined to apply *Parratt*, where constitutional violations other than a denial of due process were involved. *See Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987) ("There is, however, a fundamental difference between *Parratt* and the present case. The loss of a hobby kit in *Parratt* could not rise to constitutional magnitude unless there was an accompanying failure of procedural redress. . . . On the other hand, intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and section 1983 are intended to remedy."); *Allman v. Coughlin*, 577 F. Supp. 1440, 1447 (S.D.N.Y. 1984) ("In *Parratt*, the Court stressed that no constitutional amendment other than the Fourteenth Amendment was alleged to be violated, . . . whereas here, the plaintiffs have alleged violations of their Fourth Amendment rights as well as of their Fourteenth Amendment rights."). Accordingly, Plaintiff is not precluded from recovering economic damages associated with the loss of his licenses and tax documents simply because he had a state administrative remedy available to him.

Still, a plaintiff cannot recover under Section 1983 unless he has proven that the defendant's actions were a proximate cause of his injuries. *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998). In order to establish proximate cause, a plaintiff must "demonstrate that the

causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." *Burton v. Lynch*, 664 F. Supp. 2d 349, 361 n.17 (S.D.N.Y. 2009) (*quoting Gierlinger*, 160 F.3d at 872). If the causal connection between the constitutional violation alleged and the deprivation of property is "too tenuous," then the deprivation of property is not a proximate cause of the injury alleged. *Morrison v. Lefevre*, 592 F. Supp. 1052, 1079–80 (S.D.N.Y. 1984) ("The causal relationship between Morrison's transfer and his final loss of his property is too tenuous to make the loss of the property a result of the transfer.").

Plaintiff has alleged a sufficient causal connection between his alleged injuries and the loss of his contractor licenses—he claims that as a direct result of Defendants' conduct his licenses were either revoked or suspended. (Compl. ¶ 29.) However, Plaintiff has not sufficiently alleged a causal connection between Defendants' conduct and the failure to return Plaintiff's tax documents. (Pl. Opp'n Mot. Limine 22.) Plaintiff claims that his first criminal attorney wrote a letter to Assistant District Attorney Miles McKenna regarding the City's retention of Plaintiff's tax documents. *Id.* at 22–23. The letter indicates that Plaintiff's trial counsel had left several phone messages for McKenna, but they had not been returned. (Pl. Aff. Opp'n Mot. Limine Ex. 4.) Although Plaintiff claims that the tax documents were inventoried by the police when he was arrested, Plaintiff has not alleged that Defendant Officers actually took his tax documents or had any role in the failure to return those documents. *Id.* The causal connection between Defendants' alleged violations of Plaintiff's constitutional rights and the failure to return his tax documents is "too tenuous" to establish that the loss of his tax documents was a proximate cause of the injury alleged. *Morrison*, 592 F. Supp. at 1079–80. Accordingly, Defendants' motion to exclude Plaintiff from offering evidence of economic damages is granted as to the tax documents but denied as to the contractor licenses.

**IV.     The New York City Department of Consumer Affairs (the "DCA") Letter**

Defendants next argue that if Plaintiff is allowed to proceed on his claim for damages based on the revocation of his licenses, Defendants should be permitted to admit a letter from the DCA regarding the reasons Plaintiff's licenses were revoked (the "DCA letter"). (Def. Mot. Limine Mem. 24–25; Def. Prop. Ex. U.) This request is denied. The DCA Letter was created by Sanford Cohen at the request of Kimberly Savino, counsel for Defendants, for the purposes of this litigation. (Def. Prop. Ex. U) ("Dear Ms. Savino, . . . At your request, I have reviewed the Department of Consumer Affairs records concerning licenses held by Dino Phillips."). Accordingly, the letter is not a business record and is inadmissible hearsay. *See* Fed. R. Evid. 803(6). Furthermore, Defendants have failed to demonstrate that Cohen has any personal knowledge of the events that resulted in the revocation of Plaintiff's licenses. (Pl. Mot. Limine Mem. 24–26.) Defendants may present evidence regarding the reason that Plaintiff's licenses were revoked, but they will not be permitted to admit the DCA letter or to call Cohen as a witness at trial.[5]

Defendants further argue that even if the DCA letter is not admitted, they should be permitted to introduce the letter for the purposes of impeachment and to cross-examine Plaintiff. Defendants will, of course, be permitted to cross-examine Plaintiff regarding his claim that his

---

[5] Not only does Cohen lack personal knowledge of the events related to the revocation of Plaintiff's licenses, but Defendants failed to properly disclose Cohen as a witness. Defendants claim that Cohen's testimony was necessitated by Plaintiff's deposition testimony that his licenses were revoked "solely" because of Defendants' actions. (Def. Mot. Limine Mem. 25.) Defendants claim that this testimony constituted a "new claim for damages." *Id.* This argument is without merit. In the Complaint, Plaintiff alleges that "as a direct and proximate result of the acts of defendants, the [DCA] suspended the plaintiff's [HIC] license causing the plaintiff's business to collapse and the plaintiff to lose his source of income." (Compl. ¶ 29.) Defendants have been on notice of this damages claim since the filing of the Complaint on May 21, 2010. Defendants will not be permitted to call Cohen as a witness.

licenses were revoked solely because of Defendants' actions. However, Defendants will not be permitted to admit the DCA letter into evidence for impeachment purposes.

V.     **Plaintiff's Arrest History**

Plaintiff has been arrested four other times, convicted twice and spent approximately ten years incarcerated. (Def. Mot. Limine Mem. 10–11.) Defendants argue that Plaintiff's criminal history should be admitted because it is relevant to Plaintiff's damages claim and is proper impeachment evidence.

Turning first to the damages issue, Defendants argue that they should be permitted to admit evidence of Plaintiff's criminal history because that evidence "bears directly on the issue of any damages stemming" from Plaintiff's false arrest. *Id.* at 11. As Plaintiff concedes, courts in this Circuit have permitted a limited inquiry into a plaintiff's arrest history where a plaintiff is seeking emotional damages resulting from a false arrest. (Pl. Opp'n Mot Limine 3–4); *see Edwards v. City of New York*, No. 08 Civ. 2199, 2011 WL 2748665, at *4 (E.D.N.Y. July 13, 2011) ("Defense counsel may be able to present evidence that plaintiff has been arrested and incarcerated before based on plaintiff's testimony during his case-in-chief, but may not in any event inquire as to the nature of the arrests and may only ask about the date and duration of incarceration and the Court will instruct the jury that such evidence may be used only for the purpose of determining damages for emotional distress."); *Banushi v. Palmer*, No. 08 Civ. 2937, 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011) ("Because a plaintiff who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained, . . . defendants may inquire into plaintiff's past arrests and incarcerations during the damages phase of the trial." (internal citations and quotation marks omitted)).

9

Plaintiff seeks emotional damages resulting from Defendants' actions. Accordingly, Defendants will be permitted to ask Plaintiff if he has previously been arrested and if he has previously been incarcerated. Defendants may also inquire into the dates and duration of Plaintiff's prior incarcerations. Defendants will not be permitted to inquire into the nature of the arrests, or ask any other questions related to Plaintiff's prior arrests or convictions. The Court will give a limiting instruction to the jury that evidence of Plaintiff's criminal history is only admissible for the determination of damages.

Defendants also seek permission to use Plaintiff's past convictions to impeach him. (Pl. Opp'n Mot. Limine 7.) Plaintiff has two prior convictions. *Id.* On March 25, 1987, Plaintiff pled guilty to assault in the second degree and robbery in the second degree. *Id.* Plaintiff was released from incarceration in connection with that conviction on August 16, 1989. *Id.* On August 19, 1992, Plaintiff was convicted after a bench trial of two counts of robbery in the third degree, three counts of grand larceny in the fourth degree and one count of criminal possession of stolen property in the fifth degree. *Id.* Plaintiff was released from incarceration in connection with that conviction on August 7, 2001. *Id.* Evidence of a criminal conviction is admissible to attack a witness's character for truthfulness if the conviction is for a crime that is punishable by death or by imprisonment of more than one year. Fed. R. Evid. 609(a). However, if more than 10 years have passed since the witness's conviction or release from jail, the evidence of the conviction is only admissible if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1). Plaintiff's most recent incarceration ended 11 years ago. His most recent conviction was almost 20 years ago. Given the remote nature of the convictions, the Court finds that any probative

value from Plaintiff's prior convictions is minimal and does not substantially outweigh the prejudicial effect. Defendants' motion to impeach Plaintiff with his prior convictions is denied.[6]

## VI. Suggestion of a Specific Dollar Amount to the Jury

Although it is within the discretion of this Court to determine whether to "prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions," *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997), the Second Circuit has "emphasize[d] that specifying target amounts for the jury to award is disfavored," *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996). The Court finds no reason to allow Plaintiff's counsel to argue a specific dollar amount to the jury in this case. Defendants' motion to preclude Plaintiff from suggesting a specific dollar amount to the jury is granted.

## VII. Additional Depositions

Plaintiff requests an order that Defendants be required to produce for brief, expedited depositions the Defendant Officers and the Kings County District Attorney's Office screener who completed the documents relevant to Plaintiff's arrest, arraignment and charge. (Pl. Opp'n Mot. Reconsideration 1.) Plaintiff had ample opportunity to question these witnesses with regard to his allegation that they falsified documents in order to maliciously prosecute Plaintiff. Plaintiff's request for additional depositions is denied.

---

[6] Accordingly, Defendants' motion to inquire into Plaintiff's alleged misrepresentations of his arrest and conviction history at his deposition and to introduce portions of Plaintiff's criminal record are also denied.

## VIII. Conclusion

For the reasons set forth above:

The *Monell* claim is severed. If Plaintiff succeeds in his action against the Defendant Officers, the Court will determine whether or not Plaintiff can proceed with his *Monell* claim.

Defendants' motion to dismiss the malicious prosecution and false arrest claims against Defendant Smith is denied.

Defendants' motion to preclude evidence of Plaintiff's economic damages is granted as to Plaintiff's tax documents but denied as to Plaintiff's contractor licenses.

Defendants' motion to admit the DCA letter and call Sanford Cohen as a witness at trial is denied.

Defendants will be permitted to question Plaintiff regarding whether he has ever been arrested, how many times and how long he was incarcerated. However, Defendants will not be permitted to use Plaintiff's criminal history to impeach Plaintiff, and the Court will give a limiting instruction to the jury that evidence of Plaintiff's arrest history is only admissible for the determination of damages.

Defendants' motion to preclude Plaintiff from suggesting a specific dollar amount to the jury is granted.

Plaintiff's request for additional depositions is denied.

In light of the Court's rulings in this Order and at the June 11, 2012 argument, the parties are directed to submit an amended joint pre-trial order by July 17, 2012.

SO ORDERED:

_____s/MKB_____
MARGO K. BRODIE
United States District Judge

Dated: July 3, 2012
Brooklyn, New York